CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JAN 31 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LARRY MONROE,<br><br>*Plaintiff,*<br><br>v.<br><br>CITY OF CHARLOTTESVILLE, VIRGINIA, AND<br><br>TIMOTHY J. LONGO, SR. (IN HIS OFFICIAL CAPACITY), AND<br><br>JAMES MOONEY (IN HIS OFFICIAL CAPACITY),<br><br>*Defendants* | CIVIL NO. 3:05cv00074<br><br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dismiss, filed on September 7, 2006 (docket entry no. 49). For the following reasons, this motion will be granted in part and denied in part in an order to follow; additionally, Plaintiff will be given leave to file a second amended complaint as directed in the order to follow.

## I. BACKGROUND

### A. Factual Background

This case arises out of Defendants' investigation of an alleged serial rapist who has attacked women in the Charlottesville area. In a light most favorable to Plaintiff, the allegations are as follows.

According to Plaintiff, a single individual has committed several sexual assaults in central Virginia over the past several years. Although the Defendants do not know the physical identification of the assailant, they allegedly do have samples of the assailant's DNA;

-1-

additionally, the victims of the assaults have consistently described the assailant as a youthful-looking black male.

In response to reports of these assaults, Plaintiff alleges that Defendants adopted a policy by which they would approach (1) black (2) males (3) who were youthful-looking and (4) from whom Defendants had not previously obtained a DNA sample. Plaintiff alleges that Defendants then requested DNA samples from these individuals, one of whom was Plaintiff. Apart from sharing these characteristics (black, male, youthful-looking, no DNA on file), the individuals who were approached had little else in common—some were light-skinned, others had dark skin; some were short, others were tall; some were light and thin, others were broad and heavy.

Plaintiff alleges that none of the victims identified the assailant as a "noticeably broad or heavy" black male. Despite this allegation, Plaintiff—who is admittedly "noticeably broad and heavy"—alleges that he was approached at his home and was coerced into giving a DNA sample, as were other black males. These individuals could not decline giving consent to the DNA request without incurring unspecified negative consequences.

Plaintiff alleges that there have been reports of sexual assaults committed in the Charlottesville area by youthful-looking white males, but in these circumstances, Defendants have not instituted a policy whereby they approach youthful-looking white males and request a DNA sample.

### B. Procedural Background

Plaintiff therefore sued Defendants, alleging violations of the Equal Protection Clause of the Fourteenth Amendment and a violation of the Search and Seizure Clause of the Fourth Amendment.

Defendants have moved to dismiss Counts I and II of Plaintiff's amended complaint.

-2-

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true, must draw all reasonable inferences in favor of the plaintiff, and should not dismiss unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim" that would allow the plaintiff relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *see also Edwards*, 178 F.3d at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

As the Fourth Circuit has held, however, *Swierkiewicz* did not eliminate the requirement that a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006), *reh'g en banc denied*, 467 F.3d 378 (4th Cir. 2006); *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005) (stating that a complaint is sufficient "if, in light of the nature of the action, the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis"); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("[Although] a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief."); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("*Swierkiewicz* ... did not alter the basic pleading requirement that a

-3-

plaintiff set forth facts sufficient to allege each element of his claim."); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Even in these days of notice pleadings, a complaint asserting a negligence claim must disclose that each of the elements is present in order to be sufficient." (citation omitted) (internal quotation marks omitted)); *see also Inman v. Klöckner-Pentaplast of America, Inc.*, No. 3:06cv00011, 2006 WL 3821487, at *4 (W.D. Va. Dec. 28, 2006) ("This Court will endeavor to follow the Fourth Circuit's post-*Swierkiewicz* holdings. As such, plaintiff[] must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist.")

The Fourth Circuit has also stated, however, that motions filed under Rule 12(b)(6) "should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). This is especially true for Rule 12(b)(6) motions made by plaintiffs seeking relief under 42 U.S.C. § 1983, as Plaintiff is here. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) ("In evaluating a civil rights complaint for failure to state a claim under …12(b)(6), we must be especially solicitous of the wrongs alleged. We must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory [that] might plausibly be suggested by the facts alleged." (internal quotation marks omitted) (footnote call number omitted)); *see also Edwards*, 178 F.3d at 244.

### III. DISCUSSION

#### A. Count I (Equal Protection Clause violations)

Plaintiff alleges in Count I that Defendants violated the Equal Protection Clause[1] in two ways. First, Plaintiff alleges that in investigating sexual assaults allegedly committed by

---

[1] "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

youthful-looking black males, Defendants have a policy of approaching youthful-looking black males, but that in investigating sexual assaults allegedly committed by youthful-looking white[2] males, Defendants do *not* have a policy of approaching youthful-looking white males. This, Plaintiff says, is a constitutional violation because Defendants' decision of whether or not to have a policy of approaching potential assailants is based solely on the race of the potential assailant.[3] Second, Plaintiff alleges Defendants targeted Plaintiff because of his race in violation of the Equal Protection Clause.

As the Second Circuit has noted, there are three ways in which a plaintiff can show discrimination in violation of the Equal Protection Clause: (1) showing a law or policy that "expressly classifies persons on the basis of race"; (2) showing a facially neutral law or policy that "has been applied in an intentionally discriminatory manner"; or (3) showing a facially neutral law or policy that "has an adverse effect ... motivated by discriminatory animus." *See Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000).

### 1. Race-based investigation policy

Although Plaintiff has referred to this prong of her Equal Protection claim as a disparate treatment claim, the Court is more convinced that her claim is an express classification on the basis of race. It would be the former, for example, if Defendants instituted the following policy: every time a rape is reported and the alleged assailant's race is unknown, police officers are directed to approach and question every resident who lives in "Neighborhood A," a

---

[2] Although Plaintiff alleges a non-policy with respect to *white* males, his claim would be just as valid if he alleged a non-policy with respect to *non-black* males.

[3] This is true regardless of the origin of the information regarding the assailant's race. In other words, for purposes of the alleged policy and alleged non-policy, the source of the information regarding the alleged assailant's race is irrelevant: Plaintiff's allegation is that once having that information, Defendants employ a certain policy when that race is black and do not employ that policy when that race is non-black. The origin of the information regarding the assailant's race *is* relevant, however, in an analysis of Plaintiff's second Equal Protection claim, which is discussed below.

neighborhood whose residents are overwhelmingly black.[4] Here, Plaintiff alleges instead that the Defendants' decision regarding whether or not to institute a policy of approaching potential suspects is based solely on the suspects' race. Defendants allegedly instituted the following policy: in investigating a serial crime allegedly committed by a black assailant, police officers are directed to approach and question black Charlottesville residents; in investigating a serial crime allegedly committed by a non-black assailant, however, police officers are directed to *not* approach or question non-black Charlottesville residents.[5]

Because the Court has determined that Plaintiff's allegation constitutes an express racial classification, strict scrutiny is automatically triggered and Plaintiff has stated a claim upon which relief can be granted. *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) ("It is by now well established that all racial classifications reviewable under the Equal Protection Clause must be strictly scrutinized.... To withstand our strict scrutiny analysis, respondents must demonstrate that the ... use of race ... employs narrowly tailored measures that further compelling governmental interests.") (citations and quotation marks omitted); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) ("Accordingly, we hold today that all racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny. In other words, such classifications are constitutional only if they are narrowly tailored measures that further compelling governmental interests."). Additionally, because the Court is convinced that Plaintiff has alleged an express racial classification, Plaintiff need not allege racial animus or discriminatory intent; nor must he allege the existence of a similarly situated non-minority group. *See Farm Labor Org. Comm. v. Ohio*

---

[4] In such a situation, Plaintiff would be required to show discriminatory intent or animus and he would need to show a similarly situated group that was treated differently.

[5] It is important to note again that, at this stage, the Court must take Plaintiff's allegations as true; the Court is not deciding whether Defendants actually instituted this policy.

*State Highway Patrol*, 308 F.3d 523, 533–34 & n.4 (6th Cir. 2002); *Brown*, 221 F.3d at 337 ("Plaintiffs are correct, however, that it is not necessary to plead the existence of a similarly situated non-minority group when challenging a law or policy that contains an express, racial classification.").

For these reasons, Defendant's motion to dismiss Count I with respect to the alleged race-based policy will be denied in an order to follow.

### 2. Race-based decision to approach Plaintiff

Separately, Plaintiff alleges that in approaching him, Defendants expressly classified Plaintiff on the basis of his race.

Defendants argue that this claim should be dismissed because the description of the assailant as a youthful-looking black male originated with the victims of the sexual assaults, who all—uniformly—describe the assailant as such. Defendants cite cases from the Second (*Brown*, 221 F.3d at 329), Third (*Hall v. Pa. State Police*, 570 F.2d 86 (3d Cir. 1978)), and Sixth (*United States v. Travis*, 62 F.3d 170 (6th Cir. 1995) Circuits for support for the proposition that when an assailant's description originates with the victim and not with the state, there is no direct discrimination. Therefore, Defendants argue, Plaintiff must show that Defendants had discriminatory intent in carrying out their policy.

Again, the sole issue before the Court is whether Plaintiff has stated a claim upon which relief can be granted. It is clear, as Defendants have argued, that (1) when a victim of a crime provides investigators with a description of her assailant, (2) that description includes the assailant's race and gender, and (3) investigators then act on that description, there is no express racial classification. *See, e.g., Brown*, 221 F.3d at 337 (stating that express racial classifications are subject to strict scrutiny but that this argument "does not avail plaintiffs in this case ...

-7-

because they have not identified any law or policy that contains an express racial classification"). In affirming dismissal of the plaintiff's § 1983 claims that the defendants allegedly violated the Fourteenth Amendment, the *Brown* court stated flatly:

> [T]hey were not questioned solely on the basis of their race. They were questioned on the altogether legitimate basis of a physical description given by the victim of a crime. Defendants' policy was race-neutral on its face; their policy was to investigate crimes by interviewing the victim, getting a description of the assailant, and seeking out persons who matched that description.

*Id.* at 337.

As the *Brown* court noted, this would be a different case indeed if, upon learning that a rape had been committed, Defendants "used an established profile of violent criminals to determine that the suspect must have been black." *Id.* This would also be a different case if Plaintiff alleged "that the defendant law enforcement agencies have a regular policy based upon racial stereotypes that all black ... residents be questioned whenever a violent crime is reported." *Id.* Neither of these types of cases is alleged here.

Plaintiff tries to save his claim first by noting the criticism *Brown* has faced since it was decided. Plaintiff cannot, however, get around the fact that *Brown* is still good law, despite any criticism it has received.

Plaintiff also argues that since the Supreme Court's decision in *Grutter v. Bollinger*, 539 U.S. 306 (2003), any "race-plus" policy is subject to strict scrutiny. Plaintiff argues that because Defendants used race as a factor *at all* (regardless of the fact that race was coupled with youthfulness and whether DNA was on file), strict scrutiny should apply. Because there is no explicit racial classification and because Plaintiff has failed to allege discriminatory intent,[6] the

---

[6] Facts supporting such an allegation would be required in an analysis of facially neutral discrimination. *See, e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–265 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. 'Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' Proof of racially

Court need not even decide what level of scrutiny would apply. Instead, Plaintiff's claim fails as a matter of law. Therefore, the Court will not address the question of whether to graft *Grutter* onto *Brown* to, in essence, require strict scrutiny analysis in any case involving a police investigation that is based on a description of an assailant when that description includes—in part—the assailant's race.

Finally, Plaintiff argues that regardless of whether *Grutter* applies, the facts in *Brown* and the facts in this case are distinguishable. Plaintiff's argument is unavailing. Although the facts in *Brown* and the facts in this case are different, they are not dispositively so. In *Brown*, an assailant broke into the home of a seventy-seven-year-old woman and attacked her. *Brown*, 221 F.3d at 334. The woman described the assailant as a youthful-looking black man who likely suffered a cut on his hand during the attack. Plaintiff contends that there was no similar "cut-on-the-hand" description in this case "or any other factor separable from race that le[]d the Defendants in the present case to approach the Plaintiff and the other members of the proposed class." The Court respectfully disagrees. The *Brown* victim described her assailant as a (1) youthful-looking (2) black (3) male who (4) had a cut on his hand. Here, based on interviews with the multiple victims and, presumably, comparisons of DNA results, the assailant is described as a (1) youthful-looking (2) black (3) male who (4) did not have his DNA on file. This one factual difference (cut on the hand instead of no DNA on file) does not affect the underlying rationale of the court's decision in *Brown*.

Therefore, Defendants' motion to dismiss the second part of Plaintiff's Count I claim will be granted.

---

discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.") (citations omitted); *see also Brown*, 221 F.3d at 337 (stating that a plaintiff who alleges discrimination under a facially neutral law or policy would have to show either (1) intentional discrimination or (2) an adverse effect plus discriminatory animus).

## B. Count II (Search and Seizure Clause violation)

Plaintiff alleges in Count II that Defendant James Mooney ("Mooney") violated the Search and Seizure Clause of the Fourth Amendment in that Plaintiff was "subjected to" an encounter with Mooney, a Charlottesville police officer.[7] In support of this unlawful seizure claim, Plaintiff alleges only that he "was visited in his home and coerced into giving a DNA sample although his appearance, upon information and belief, matched no composite or any other description of the assailant other than his being a black male." (Am. Compl. ¶ 25)

Even if he could prove that the statement in paragraph twenty-five were true, Plaintiff would not state a claim upon which relief could be granted, at least with respect to Count II. Police officers need not have any basis whatsoever for suspecting a particular individual before approaching that individual. *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991) ("We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual."). Plaintiff argues in his memorandum in opposition that he *could* prove a set of facts showing that the encounter between Mooney and Plaintiff was not consensual. But Plaintiff's complaint only says that he "was visited in his home." Nowhere does the complaint allege that Plaintiff did not feel free to leave, nor does it allege facts that could give rise to such an inference.[8] Therefore, the Court will grant Defendants' motion to dismiss Count II, but will grant Plaintiff leave to amend his complaint.

---

[7] Defendants did not move to dismiss Count III of Plaintiff's amended complaint—that the taking of bodily fluids from Plaintiff constituted a Fourth Amendment violation (a claim of unlawful search).

[8] The Court understands that Plaintiff has stated in a previously submitted memorandum that "Plaintiff intends to establish that the nature of all of the encounters with class members was non[-]consensual given the environment at the time, the general relationship between the police department and members of the minority community, the locations in which the encounters took place, the techniques used by the officers in making their requests[,] and other factors." Additionally, Defendants know (according to Plaintiff) that Plaintiff "did not feel free to decline to respond to Officer Mooney's questions and go on his way." None of these allegations, however, are contained within Plaintiff's amended complaint.

-10-

## IV. CONCLUSION

For the reasons stated above, Defendant's motion will be denied with respect to Plaintiff's first Equal Protection claim in Count I of his amended complaint, granted with respect to Plaintiff's second Equal Protection claim in Count I, and granted with respect to Count II, all in an order to follow. Plaintiff will, however, be given leave to amend Count II of the amended complaint as directed in the order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _Norman Moon_
United States District Judge

_January 31, 2007_
Date