# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

APR 17 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| LARRY MONROE,<br><br>　　　　　　　　　　*Plaintiff,*<br><br>　　　　v.<br><br>CITY OF CHARLOTTESVILLE, VIRGINIA, AND<br><br>TIMOTHY J. LONGO, SR. (IN HIS OFFICIAL CAPACITY), AND<br><br>JAMES MOONEY (IN HIS OFFICIAL CAPACITY),<br><br>　　　　　　　　　　*Defendants* | CIVIL NO. 3:05cv00074<br><br><br><br><br>MEMORANDUM OPINION<br><br><br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dismiss, filed on March 1, 2007 (docket entry no. 62). For the following reasons, this motion will be GRANTED in an order to follow.

## I. BACKGROUND

### A. Factual Background

This case arises out of Defendants' investigation of an alleged serial rapist who has attacked women in the Charlottesville area. In a light most favorable to Plaintiff, the allegations are as follows.

According to Plaintiff, a single individual has committed several sexual assaults in central Virginia over the past several years. Although the Defendants do not know the physical identification of the assailant, they allegedly do have samples of the assailant's DNA; additionally, the victims of the assaults have consistently described the assailant as a youthful-looking black male.

In response to reports of these assaults, Plaintiff alleges that Defendants adopted a policy by which they would approach (1) black (2) males (3) who were youthful-looking and (4) from whom Defendants had not previously obtained a DNA sample. Defendants allegedly then requested DNA samples from these individuals, one of whom was Plaintiff. Apart from sharing these characteristics (black, male, youthful-looking, no DNA on file), the individuals who were approached had little else in common—some were light-skinned, others had dark skin; some were short, others were tall; some were light and thin, others were broad and heavy.

Plaintiff alleges that none of the victims identified the assailant as a "noticeably broad or heavy" black male. Despite this allegation, Plaintiff—who is admittedly "noticeably broad and heavy"—alleges that Defendant James Mooney ("Mooney"), a police officer employed by the Charlottesville Police Department, visited Plaintiff at Plaintiff's home and coerced Plaintiff into giving Mooney a DNA sample, as were other black males. According to Plaintiff, these individuals could not decline giving consent to the DNA request without incurring negative consequences.

Plaintiff alleges that there have been reports of sexual assaults committed in the Charlottesville area by youthful-looking white males, but in these circumstances, Defendants have not instituted a policy whereby they approach youthful-looking white males and request a DNA sample.

### B. Procedural Background

Plaintiff therefore sued Defendants, alleging violations of the Equal Protection Clause of the Fourteenth Amendment and violations of the Search and Seizure Clause of the Fourth Amendment. Plaintiff's Equal Protection claim regarding Defendants' alleged-race based policy remains viable, but in an order and opinion entered on January 31, 2007 (docket entry nos. 58,

- 2 -

59), I granted Defendants' motion to dismiss Plaintiff's other Equal Protection claim—that Defendants violated his constitutional rights in approaching him to request DNA. In the same order, I granted Defendants' motion to dismiss Count II, but allowed Plaintiff to amend his complaint, which he did.

In his amended complaint, Plaintiff reasserted the already-dismissed Equal Protection claim and added language that Plaintiff contends is sufficient to withstand Defendants' motion to dismiss Count II. Defendants have filed a motion to dismiss both the earlier-dismissed portion of Count I and the newly supported Count II.

## II. MOTION TO DISMISS

### A. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999).

In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true, must draw all reasonable inferences in favor of the plaintiff, and should not dismiss unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim" that would allow the plaintiff relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *see also Edwards*, 178 F.3d at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

As the Fourth Circuit has held, however, *Swierkiewicz* did not eliminate the requirement that a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each

of his causes of action exist." *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006), *reh'g en banc denied*, 467 F.3d 378 (4th Cir. 2006); *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005) (stating that a complaint is sufficient "if, in light of the nature of the action, the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis"); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("[Although] a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief."); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("*Swierkiewicz* … did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim."); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) ("Even in these days of notice pleadings, a complaint asserting a negligence claim must disclose that each of the elements is present in order to be sufficient." (citation omitted) (internal quotation marks omitted)); *see also Inman v. Klöckner-Pentaplast of America, Inc.*, No. 3:06cv00011, 2006 WL 3821487, at *4 (W.D. Va. Dec. 28, 2006) ("This Court will endeavor to follow the Fourth Circuit's post-*Swierkiewicz* holdings. As such, plaintiff[] must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist.")

The Fourth Circuit has also stated, however, that motions filed under Rule 12(b)(6) "should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). This is especially true for Rule 12(b)(6) motions made by plaintiffs seeking relief under 42 U.S.C. § 1983, as Plaintiff is here. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) ("In evaluating a civil rights complaint for failure to state a claim under …12(b)(6), we must be especially solicitous of the wrongs alleged. We must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to

relief under any legal theory [that] might plausibly be suggested by the facts alleged." (internal quotation marks omitted) (footnote call number omitted)); *see also Edwards*, 178 F.3d at 244.

## B. Discussion

First, I previously dismissed Plaintiff's claim that Defendants' decision to approach Plaintiff and request DNA violated the Equal Protection Clause of the Fourteenth Amendment. Defendants' unopposed motion to (again) dismiss this portion of Count I will therefore be granted in an order to follow.

Next, Defendants claim that Count II—which alleges that Defendants subjected Plaintiff to an unconstitutional encounter—should be dismissed because even if Plaintiff could prove his newly added facts supporting this claim, Plaintiff's claim would be legally insufficient. I agree with Defendants.

Plaintiff alleges that Defendants violated his Fourth Amendment rights when they subjected him to an encounter at his home. The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

Of the three types of police-citizen interactions that may trigger Fourth Amendment rights, the only one implicated here is a "brief encounter[] between police and citizens, which require[s] no objective justification." *See United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002) ("The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief encounters between police and citizens, which require no objective justification." (citations omitted)).

A seizure triggering Fourth Amendment rights "does not occur simply because a police

- 5 -

officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *United States v. Brown*, 401 F.3d 588, 593 (4th Cir. 2005); *Trulock v. Freeh*, 275 F.3d 391, 400 n.2 (4th Cir. 2001). But such an encounter "may, … at some unspecified point, cross the line and become an unconstitutional seizure." *Weaver*, 282 F.3d at 309.

To determine whether Plaintiff here was seized, triggering Fourth Amendment rights, I must determine, "in view of the totality of the circumstances," *Weaver*, 282 F.3d at 309, "whether a reasonable person would have felt free to decline [Defendant Mooney's] requests or otherwise terminate the encounter," *Bostick*, 501 U.S. at 438; *see also Bostick*, 501 U.S. at 436 ("[T]he appropriate inquiry is whether a reasonable person would feel free to decline the officer['s] requests or otherwise terminate the encounter."); *Bostick* at 439 ("[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer['s] requests or otherwise terminate the encounter."). Contrary to Plaintiff's assertion, this is a question of law for the court. *See Weaver*, 282 F.3d at 309 ("Because the test is an objective one, its proper application is a question of law."). Additionally, because this is an *objective* test, Plaintiff's *subjective* beliefs are irrelevant in this inquiry. *See, e.g., United States v. Analla*, 975 F.2d 119, 124 (4th Cir. 1992) ("We emphasized in *United States v. Gordon* that the … standard is an objective test, not a subjective one." (citation omitted)).

The Fourth Circuit has set forth several factors and considerations that help inform the totality-of-the-circumstances determination:

> (1) whether the police officer asked for the plaintiff's permission before questioning him, *see, e.g., United States v. Flowers*, 912 F.2d 707, 709–12 (4th Cir. 1990);

- 6 -

(2) the time, place, and purpose of the encounter, *see, e.g., Weaver*, 282 F.3d at 310; *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001) (finding no seizure, in part because the interaction occurred at the plaintiff's work, a "familiar setting");

(3) whether the officer questioned the plaintiff "as a matter of routine, rather than as a particularized investigation of [the plaintiff]," *United States v. Gray*, 883 F.2d 320, 323 (4th Cir. 1989);

(4) the officer's appearance and actions during the encounter, including:

    (a) his general demeanor, *see Weaver*, 282 F.3d at 310; *Flowers*, 912 F.2d at 709–12; *Gray*, 883 F.2d 320, 323;

    (b) whether there were several officers present, *see Weaver*, 282 F.3d at 310;

    (c) whether the officer displayed his weapon, *see Weaver*, 282 F.3d at 310; *Freeh*, 275 F.3d at 401; *Flowers*, 912 F.2d at 709–12; *Gray*, 883 F.2d 320, 323;

    (d) whether the officer physically touched the plaintiff, *see Weaver*, 282 F.3d at 310; *Freeh*, 275 F.3d at 401; *Flowers*, 912 F.2d at 709–12; *Gray*, 883 F.2d 320, 323;

    (e) whether the officer physically restrained the plaintiff or prevented the plaintiff from moving, *see Flowers*, 912 F.2d at 709–12; *Gray*, 883 F.2d 320, 323;

    (f) whether the officer coerced answers from the plaintiff, *see Flowers*, 912 F.2d at 709–12; *Gray*, 883 F.2d 320, 323;

    (g) whether the officer somehow displayed his authority, *see Flowers*, 912 F.2d at 709–12;

(5) the officer's verbal communications, including:

    (a) the words he used, *see Weaver*, 282 F.3d at 310; *Freeh*, 275 F.3d at 401; *Gray*, 883 F.2d 320, 323;

    (b) his tone of voice, *see Weaver*, 282 F.3d at 310; *Freeh*, 275 F.3d at 401; *Flowers*, 912 F.2d at 709–12; *Gray*, 883 F.2d 320, 323;

    (c) his statements to others who were present during the encounter, *see Weaver*, 282 F.3d at 310;

    (d) the length of the questioning or encounter, *see United States v. Wilson*, 953 F.2d 116, 123 (4th Cir. 1991); *Flowers*, 912 F.2d at 709–12;

(6) whether the plaintiff unsuccessfully attempted to terminate the encounter, *see Freeh*, 275 F.3d at 401; *Wilson*, 953 F.2d at 123 n.2; and

(7) whether the officer told the plaintiff that the latter was not free to terminate the encounter, *see Freeh*, 275 F.3d at 401.

With these considerations in mind, I turn now to the allegations in Plaintiff's second amended complaint.

Plaintiff alleges that Mooney "visited [him] in his home and coerced [him] into giving a

- 7 -

DNA sample" (Second Am. Compl. ¶ 25), that the encounter was not consensual (Second Am. Compl. ¶ 26), that Plaintiff had "both an objectively and subjectively reasonable belief that he was not free to decline the officer's request or otherwise terminate the encounter without suffering adverse consequences" (Second Am. Compl. ¶ 26), that Defendant Mooney was in uniform during the encounter (Second Am. Compl. ¶ 27), that Mooney did not tell Plaintiff that Plaintiff could terminate the encounter or refuse to provide a DNA sample (Second Am. Compl. ¶ 27), that because Mooney approached Plaintiff at the latter's home, the interaction would be visible by community members and Plaintiff feared retribution by members of his community because he would appear to be a snitch (Second Am. Compl. ¶ 28), that if Plaintiff refused Mooney's request, Plaintiff would "end up downtown" (Second Am. Compl. ¶ 29), that Plaintiff believed that he could not refuse Mooney's request because to do so could signal his guilt, especially considering the "intense pressure" on the police department to capture the rapist (Second Am. Compl. ¶ 29), that because Mooney approached Plaintiff at Plaintiff's home, Plaintiff could not terminate the encounter because when police officers "come to your house, that means they mean business, so you['ve] got to do what they say to do" (Second Am. Compl. ¶ 30), that Plaintiff's beliefs were objectively reasonable (Second Am. Compl. ¶ 31), that relations between minority communities and police officers are such that Plaintiff was required to cooperate (Second Am. Compl. ¶ 31), that others in Plaintiff's situation—but apparently not Plaintiff—were "harangued" and shown "grisly pictures" to coerce consent (Second Am. Compl. ¶ 32), and that officers were instructed to make a report of those who refused to agree to provide a DNA sample (Second Am. Compl. ¶ 34).

In light of the totality of the circumstances test, however, Plaintiff's claim—as alleged—is legally insufficient. As noted above, Plaintiff's subjective beliefs are irrelevant in determining

whether the encounter was a seizure for Fourth Amendment purposes. Therefore, Plaintiff's "subjectively reasonable belief" that he could not refuse Mooney, his fear of community retribution, and his fear that refusal would signal his guilt and result in him being taken into custody are all irrelevant considerations here.

I am convinced that the remaining allegations all lead to the inexorable conclusion that a reasonable person would have felt free to decline Mooney's requests or to otherwise terminate the encounter. The only facts supporting Plaintiff's claim (compared to his legal conclusions that he was "coerced" and that he had an objectively reasonable belief that he could not refuse Mooney's request, conclusions I need not accept without factual support) are that (1) he was visited at his home, (2) that Mooney was in uniform, (3) that Mooney failed to tell Plaintiff he could terminate the encounter, and (4) that minority-police officer relations are such that Plaintiff was required to acquiesce. Even if Plaintiff could prove all of these allegations, they would not be enough to trigger a Fourth Amendment violation.

Here, it appears Mooney asked for (and possibly received) Plaintiff's permission before questioning him; Mooney visited Plaintiff at his home, a "familiar setting";[1] Mooney appears to have spoken to Plaintiff as a matter of routine and not because Plaintiff was somehow targeted; and there are no allegations that Mooney was accompanied by other officers, drew or displayed his weapon, touched Plaintiff or restrained him in any way, refused to leave Plaintiff's house upon request (or was even asked to leave), used a strong tone of voice, or stayed at Plaintiff's house for any extended period of time. Merely because Plaintiff may have felt somewhat odd in

---

[1] Indeed, the fact that the encounter occurred in view of the public ("visible by other members of the community," as Plaintiff frames it) does not favor Plaintiff. Public encounters are less likely to be construed a seizure than are ones outside the public's view. *See, e.g., United States v. Weaver*, 282 F.3d 302, 312 (4th Cir. 2002) ("[A]lthough [the officer] was in uniform and armed, he at no point threatened [the plaintiff] or brandished his weapon[ and] the encounter occurred in a public parking lot in the middle of the day ....").

refusing Mooney's request or asking Mooney to leave the house does not mean that Plaintiff was thereby seized for Fourth Amendment purposes. *See, e.g.*, *United States v. Weaver*, 282 F.3d 302, 311–12 (4th Cir. 2002) ("Admittedly, [terminating the encounter] may have created an awkward situation between [the plaintiff and the officer], but awkwardness alone does not invoke the protections of the Fourth Amendment, particularly so when the test employed is an objective one.").

And although Plaintiff argues that Mooney never told him that Plaintiff could terminate the encounter at any time, courts have consistently held that Fourth Amendment rights are not triggered when an officer fails to make such a statement. *See, e.g.*, *United States v. Mendenhall*, 446 U.S. 544, 555 (1980) ("Our conclusion that no seizure occurred is not affected by the fact that the respondent was not expressly told by the agents that she was free to decline to cooperate with their inquiry, for the voluntariness of her responses does not depend upon her having been so informed."); *United States v. Analla*, 975 F.2d 119, 124 (4th Cir. 1992) ("It is also clear that the encounter does not become a seizure merely because the officers do not tell the defendant that he is free to leave or to refuse to comply with their requests.").

Plaintiff's simultaneous arguments about both community retribution (for Plaintiff possibly being a snitch) and deteriorating community-police officer relations are similarly of no avail. To accept Plaintiff's argument would be to find that a Fourth Amendment seizure took place every time a police officer either (a) spoke to someone at that person's home or (b) did so when the home is located in a community filled with residents who are suspicious of police activity. Such a holding would turn the well-established general rule—that a seizure triggering Fourth Amendment rights "does not occur simply because a police officer approaches an individual and asks a few questions," *Florida v. Bostick*, 501 U.S. 429, 434 (1991)—on its head.

- 10 -

Therefore, Plaintiff's reliance on Justice Stevens' dissenting opinion in *Illinois v. Wardlow*, 518 U.S. 119 (2000), is misplaced.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, filed on March 1, 2007 (docket entry no. 62), will be GRANTED in an order to follow as to (1) the race-based decision to approach Plaintiff alleged in Count I and (2) Count II.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
United States District Judge

*April 17, 2007*
Date

- 11 -